I can tell all the lawyers like I do in Philadelphia and everywhere else that we have read the briefs, we know the issues, so you may be surprised that we will step in and ask you questions. So I call Delponte v. Coral World, Virgin Islands, number 063996. Mr. Simpson. Good morning, Your Honors. Andrew Simpson on behalf of Joseph Delponte. I would like to reserve three minutes for a rebuttal, please. May it please the Court. I think the key issue in this case, at least from Mr. Delponte's perspective, is the application of the Plain Language Act of the Virgin Islands. My opponent argues in his brief that it does not apply, and Judge Gomez stated an oral argument that it did not apply, but provided no explanation. I think that the definition of consumer contract is where the question arises as to whether or not it applies or not, and the definition provides that it includes writings that are required to complete a consumer transaction. It is uncontested that this writing was required, the waiver in question, was required to complete the consumer transaction, and therefore this is a consumer contract. The remaining elements of the Plain Language Act are clearly applicable, and therefore the Act applies. Isn't the question, well, is one of the questions, whether entertainment is covered under the Act? Is that a given? Your Honor, the Act does not refer to entertainment, and it neither includes nor excludes it. But what it does refer to is services, and I submit that this is a service that was provided to Mr. Delponte. Again, the Act is silent as to entertainment. How is it unconscionable to enforce the waiver? Well, Your Honor, there are a number of elements to unconscionability. In this jurisdiction, this Court spoke to it in Alexander v. Anthony International, and I think that provides the governing legal standard. In this case, there are a number of factors that made it unconscionable. First of all, there's the hiding of the critical part of the release that the coral world relies upon, the negligence reference, below the medical history in a section that says, this is not a new clause that is waiving a new section. This is merely defining and stating my understanding of what has already come before. And what has already come before is a reference to contract and breach of warranty. The contract is completely one-sided in favor of coral world. Mr. Delponte has no remedies if coral world is negligent or harms him in some way. Coral world has every remedy it wants if Mr. Delponte does something to injure it. Not only is he required to give up his rights, he's required to give up his rights to even pursue a lawsuit. And in fact, under coral world's interpretation, he's liable for attorney's fees and costs for bringing this action if he fails. It requires the participant to give up his rights on behalf of his family, even though that clearly is overreaching because one individual cannot give up someone else's rights. And coral world escapes with no responsibility whatsoever when it is the sole party that is in control here. Having the participants sign the release before the instruction is given, which I believe the evidence shows or certainly is a question of fact as to whether that happened. Referring to the release as a medical questionnaire in the presentation that is given, when it's actually far more substantial than that. And there's no true value given in exchange for the waiver. There's not even an offering of an opportunity to purchase insurance, nor an offer of a medical liability policy regardless of liability. Did you argue unconscionability in the release? Yes, Your Honor, I certainly did. It's referenced in the opening brief as well as in the reply brief. Well, I see the four arguments you've said. One, and the first is as to what is encompassed within the act. The second isn't really relevant. The release clauses are invalid. You mean you argued it in the body of the brief but not in one of the headings? That's correct, Your Honor. When I argue that the Plain Language Act applies and requires the non-enforcement of the agreement, I argue that it's unconscionable and that is why. I'm not sure I spelled it out as forcefully as I did in oral argument here. That's what I was wondering. I thought that was implicit. It wasn't discussed in the proceedings below because the court never got to that point. But it was argued below and it is certainly argued here. Well, if it's not unconscionable, you would agree that you lose, right? No, Your Honor. I think if it's not unconscionable, there's two other bases for my client to prevail. One is on the argument that the contract is inherently ambiguous and even under just traditional – I'm sorry. I mean you lose on the Plain Language Act. I think I do, Your Honor. I think to be candid, the law – Section 260 of the act says a violation of this – The Plain Language Act provides a remedy of its own, a civil remedy. Correct. But the act itself says a violation of this chapter shall not render any consumer contract void or voidable or serve as a defense in an action breach thereof or breach thereof unless the enforcement of the contract which violates this chapter would be unconscionable. Correct, Your Honor. So even if it comes within the scope of the definition of a service contract, it's still in order to be a defense to you when he's claiming release, it's got to be unconscionable. I think that's a fair reading of the act. It actually doesn't state – it only refers to a breach of contract action. Of course, this is not a breach of contract action. But I think a fair reading of the statute is yes, it has to be unconscionable. I think we've also demonstrated that just under basic contract principles, the contract is hopelessly ambiguous. It is filled with errors. There are portions of it that simply cannot be interpreted. Why is it ambiguous? It certainly seems to say that – this is the waiver. It unambiguously releases Carl Wuerl from liability. The waiver states, paragraph 2, I release Carl Wuerl from any and all liability for injury to me resulting from the use of this equipment in any claim based upon breach of warranty, contract, or other legal theory, excepting myself the full responsibility for any such injury which may result. Is that unambiguous? Certainly, Your Honor, because it talks about in terms of breach of warranty or contract. Or other legal theory. Yes, any legal liability. That's pretty clear, isn't it? Your Honor, I think the case law is clear that when you use terms of a contract in series like this, you have specific and then general. General is ruled to be determined by the specific. And remembering, of course, that this is a release, and under common law, under the restatements, it must be strictly construed against – But that's not all it says. It also continuously states that the participant assumes the risk, as well as holds Carl Wuerl for personal injury. And paragraph 8 states that the participant has read the waiver and agrees to give up his or her right to collect monetary damages from Carl Wuerl for personal injuries due to negligence. How is that ambiguous? Again, Your Honor, because of the deceptive placement of the final paragraph, it's rendered ambiguous. Perhaps if that paragraph were above the medical history and above the section where it says, I understand that I'm giving up my legal rights as per the above, that would be one thing. But it doesn't do that. And I submit that the final paragraph is not a statement saying, I am waiving negligence. It is a statement saying, I understand that what it says up here is X, Y, and Z. But what it says up there is not X, Y, and Z. It is a breach of warranty and breach of contract waiver, which doesn't even appear in the final paragraph. Is your whole argument that the paragraph, based upon the fact that the paragraph is placed, the placement of the paragraph? It's not my whole argument, Your Honor, but I think it's an important part of it. Well, how can the placement of the paragraph be relevant or dispositive when the waiver states I have to spread the whole thing? I'm sorry. I mean, the waiver, it actually states I have read the waiver. And what difference does it make where it's placed, if he's read the waiver? Well, Your Honor, if he's read the waiver and believes that he understands what is said above and he understands that paragraph is merely stating, yes, I understand what I've read above, and what he understands is I've waived my breach of warranty and breach of contract claims, which is what it says twice above, I submit that's ambiguous. It's unfair. It's overreaching. It's unconscionable. And I would like to point out in my brief, I somehow substituted two case names. I made a reference to a Third Circuit case, Kain. Could you tell us what page? Yes. It's in my reply brief, actually, which looks like I did not pull it out of my bag. In my reply brief, I referred to Kain v. U-Haul International Incorporated, a Third Circuit case that I stated. What page? Page 23 of my brief, of my reply brief. Oh, Kain v. Kain. Yes, Your Honor. And that's an error. The correct citation should have been Carter v. Exxon Company USA, which is found at 177 F. Hold it. I think we're going to write. Okay. Carter v. Exxon. Company USA. And the citation is 177 F. 3rd, 197. The pinpoint cite bridges pages 207 and 208, and it's a Third Circuit decision from 1999. That is a case on New Jersey law that follows the Juta decision, also cited on page 23, that talks about the fact that deceptive placement of a term in a contract can indeed render it either ambiguous or unconscionable. Okay. And you said there was another cite that you wanted to change? No, that was the only one, Your Honor. Of course, the waiver states a recognition that there's, I think it's an area of unpredictability when you go into the C. So Mr. Del Ponte knew that when he entered into this contract, didn't he? Your Honor, I think, yes, he did. That refers really to the assumption of risk. Yeah. And our point there is that what they have talked about, they have defined the C-track activity in the release. It's in capital letters, as is one other defined term, the release doors, I believe it is, or the release parties. And it's defined as very specific involvement of wearing the helmet and being underwater in two different spots. If you combine them to give it the broadest possible interpretation, it's wearing the helmet and or underwater. This accident didn't happen then. It happened on the ladder. It happened on the ladder. He was not wearing a helmet. It was not in an area of unpredictability. It was just an area where there was a poorly designed ladder. The point is that there has to be informed consent for there to be assumption of risk. And that is an issue that the defendant bears the burden of proof on. And I think there is clearly a jury question as to whether or not he gave informed consent regarding a fall on the ladder. Had he been bitten by a shark when he was underwater? Had his helmet failed when he was underwater? Had the instructor done something negligent when he was underwater? He'd have an assumption of risk defense. But that's not where this happened. And there's a very genuine question as to when, at what point, does the assumption of risk begin? Thank you. Thank you, Your Honor. We'll hear you on rebuttal. Yes, Your Honor. Thank you. May it please the Court, Gary Bryant for the appellee. There's simply no question that Mr. DelPonte knew exactly what he was signing. Anyone who can read the English language and understand it could not mistake this document as anything other than a liability release and an expressed assumption of the risk. And I'll say why in a few moments. And it's just repeating what the district court said, along with some paragraphs the district court didn't even address. What this case is about is whether Mr. DelPonte can find a way to get around what he agreed to in that contract. That's what this case is really about. In interpreting this contract, the district court properly focused on the intent of the parties. And the way you determine the intent of the parties, if the language is unambiguous, is look at the four corners of the document. Everything, everything about this document makes it perfectly clear what it is. The title of this document, Coral World Sea Track Liability Release, an Expressed Assumption of Risk. There can be no question when you look at that title, which is in bold, as large a font as you want, you know what's coming. Paragraph 8, one of the paragraphs the district court focused on, makes it perfectly clear that liability is being released for everything. I will agree that the appellant did argue unconscionability. And what he argued was paragraph 8 is unconscionable because it is deceptively placed. And I will leave it to this court to decide whether or not putting it in all caps right before the signature line is deceptively placing, trying to hide it from the plaintiff. Paragraph 2, the district court noted that this paragraph broadens Coral World's insulation from liability. Now, the appellant takes the position, well, you should agree with the district court that this paragraph only relates to breathing compressed air and operating equipment provided as part of the sea track tour. Well, what he's confused about is when the judge wrote that, he was referring to paragraph 2. The judge noted paragraph 1, which is only three lines long, does refer to breathing compressed air underwater. And then it goes to paragraph 2, which broadens the liability to release dramatically. And what the judge says is if all you had was paragraph 1, you may have some argument that climbing down the ladder wasn't part of what is being released. But when you look at paragraph 2, it, as the court put, broadens Coral World's insulation from liability for negligence. The court correctly noted that paragraph 5 succinctly explains the consequences of signing the waiver. The signor personally assumes all risk in connection with this experience for any harm, injury, or damage that may befall me while I'm a participant in this sea track activity, including all risks connected therewith, whether foreseen or unforeseen. Paragraph 3 provides that Del Ponte will hold the released parties, which includes Coral World, harmless from any and all claims or causes of action by whomever or whenever made or presented from personal injury, property damage, or wrongful death. Would the Virgin Islands Plain Language Act apply? No, Your Honor, it doesn't apply. Well, he had to sign this waiver to get Coral World services, did he? Yes, he did. The Plain Language Act defines a consumer contract. And it says a consumer contract is, it includes other documents necessary to finalize or make that consumer contract happen. But it specifically says a consumer contract means a written agreement in which a natural person releases property, no, obtains credit, no, obtains insurance, no, goes on down. The one they're relying on is contracts for services. And what I would do is challenge you to find the consumer contract, which is a written contract for services. That's not what this is. Well, in fact, the Act states services are obtained for personal, family, or household purposes. So is it your argument that entertainment is not a personal service? No, it's not. It's not your argument? No, it is not. Oh, gee. No, the argument is the consumer contract is a written contract that provides for services. And what I challenge you to do is read this contract and find anything. It doesn't describe the services being offered. It describes risks. It does not state how much the services will be. It does not state the terms of payment. It does not state the duties of the seller. What this Act is designed to do is when you enter a consumer contract that has multiple headings and there are several pages, what the Virgin Islands Legislature doesn't want you to do is to bury exculpatory language in the back of this contract under a strange heading. Look at this. So you're saying that this may be a service contract, but it's not in writing. No, it's not. I'm sorry. That's ambiguous. When I said this contract, there obviously is an agreement here other than what is in this release. But you're saying that's oral. That's right. If there were a contract for the services, it'd be in the appendix. What Coral World does is it doesn't have a written contract for its services. It has a written contract for one thing and one thing only. And what you do is you look at this document and you see one thing. It has a written contract releasing liability and expressly providing that a party assumes the risk. Now, if the Plain Language Act said a consumer contract that releases liability, we'd be covered. If it said that it requires that someone participating in a voluntary recreational activity assume the risk, we'd be covered. It doesn't say that. I know there's a saving provision that says, and any documents necessary to consummate or make that consumer transaction occur. But the language of the Act is a consumer contract is a written contract which provides four, and it has those six things, and release of liability isn't one of them. And this contract, this is not the typical consumer contract. What's the consideration for this release? Participation in the activity. It's participation in the activity. The bottom line is you don't have to participate. You do not have to do this. But if you do, you're going to do it assuming the risk associated with what you're doing, even if the court were to conclude that somehow this is a consumer contract and that you can couple an oral contract that provides the services with a written release of liability and come up, come within the consumer contract, the Plain Language Act. That doesn't change anything because the consumer contract that provides, if there's a violation, you get damages. It's $1,000 plus whatever damages you can prove. Well, typically someone might come into court and say, you know, there's a late fee escalation buried in the back violating the Plain Language Act. Ought not to have to pay that. Hey, wait a minute. There's an interest escalation clause. If I'm late by one day that I never saw and it should have been booked, you bring the Act, you prove that violation, and that's what your remedy is. It's designed to make sure that when someone tries to sneak something in a consumer contract, you don't get away with it and you don't get the benefit of it. But that's not what happened here. They're not coming in saying, oh, as a result of this release of liability, I was totally confused. And Judge Gomez says, there's no way you could be confused. Everything about this document makes it clear what you're doing. You're releasing liability every way from Sunday. There's no question about that. So I think the plaintiff knew he couldn't bring a claim under the Plain Language Act and present evidences of damages because there's no way he can convince anybody. There's no question of fact with regard to whether or not he understood what he was signing. In fact, assuming you're right that he understood and that it's not ambiguous, your friend across the way says, but the restatement of contracts, Section 1952C, says that when a plaintiff is a member of a protected class under the applicable law, It's the public policy. then the defendant can't get a release for his own his or her or its own negligence. And assuming it is, isn't it true that this is, Mr. Del Ponte is someone who is protected among the protected class under the Plain Language Act? Well, that assumes the Plain Language Act applies and this is a consumer contract. And our position would be, no, it's not a consumer contract. And if that were the case, then these clauses would be totally void throughout the Virgin Islands and they could not be, that's not what's been happening. But if it applied when someone voluntarily engaged in recreational activity and signed a release of waiver, then that would change the law in the Virgin Islands. That restatement, and we cited these cases in our brief, that provision is designed when parties don't have equal bargaining. When you have an employee who needs a job, an employer that says, you want a job? You're going to give up some rights. When you have someone that needs a place to stay and someone who's leasing low-rent apartments that says, you want a place to stay? You're going to have to give up some rights. And the law has been clear throughout the country that it isn't typically applied in situations where someone says, do you want to go on a recreational activity using our services? Sign a waiver and release. Nothing, nothing compelled Mr. Del Ponte to do this. He did it because he wanted to. He did it as part of a recreational activity. And that's the reason we don't think this public policy argument applies. The assumption of the risk argument that was made, I think, merits attention. There's no question that this isn't just a release of liability. It's an express assumption of the risk. An assumption of the risk can be implied and expressed. And when it's implied, there are usually some factual issues tied up in it. This is expressed, and it seems to be that the primary question is whether or not Mr. Del Ponte understood the nature of what he was going to be doing and whether or not it included descending the ladder. And I direct the court's attention to page 126 of the appendix. And these are the materials that were handed out to the participants in the C-TRAC activity. And on joint appendix page 126, towards the middle, it says, entering the water. We will bring each of you down one at a time to the ladder. Always maintain a minimum of three points of contact on the ladder, both hands one foot as you descend. Turn around, descend down the ladder until the water is nearly shoulder level. It goes on and explains the activity of descending the ladder and provides instructions with regard to that particular activity. So we believe it is hollow to argue, well, the C-TRAC activity did not involve descending the ladder. Of course it involved descending the ladder. It's the only way you get down into the water is by descending the ladder. I'll conclude with this. Just read the one-page liability release and assumption of the risk. There is simply no escaping that Mr. Del Ponte agreed to assume the risk. He agreed to release Coral Whirl from all liability that can be imagined in light of the way this release is drafted. What he did is he asked the trial court to let him out of the contract that he understood and agreed to, and the trial court simply concluded, I find no legal basis for doing so. You have a series of arguments based on different theories, i.e. the plain language act is not applicable. Which is the most all-encompassing of your arguments? I mean, do we have to reach each of them? Well, no, I don't think so. Even if the plain language act were to apply, it doesn't void the contract. Judge Stapleton is absolutely correct. Section 260 says, okay, if there's a violation, here's what doesn't happen. You don't use it as a defense. It doesn't void the contract. It doesn't even render the contract voidable. There is a saving provision if there's a violation which simply says, assuming it applies and our contention is strongly that it doesn't because this is not a consumer contract for the reasons I've stated, but if it does apply and there's a violation, you can get out of it by proving unconscionability, proving that enforcing the contract would be unconscionable. And I will read from Mr. Del Ponte's brief. A violation of the act, it would, and I'm quoting, it would be unconscionable to allow a quarreled world to exempt itself from liability for negligence claims through the use of a deceptively worded document. That's their unconscionability argument. That's their unconscionability argument. And I suspect, Judge, if you said encapsulate it for me, it doesn't matter. Do you think it is unconscionable to enforce this particular contract? And we believe the answer is unquestionably that it is not unconscionable. Thank you. Thank you. I'm content. Okay. Mr. Simpson. Yes, Your Honor. I'd like to point out a few points in rebuttal. First of all, my opposing counsel makes reference to the argument that there's no contract, there's no written contract here. The release in question specifies that there's consideration, it's an exchange of promises. That's a written contract. Moreover, the law is very clear that any writing can constitute a contract. And clearly there is a writing here to constitute a contract. I also think this argument has been waived. I don't believe the argument that there needed to be a separate writing has ever been made in this proceeding. With respect to the public policy argument.  Where is the contract? Is there a contract that says I want to participate in this activity and you will provide it to me? Where is the contract? Mr. Del Ponte entered into an agreement on the cruise ship to participate in the sea track. Is it a written contract? My recollection is, yes, Your Honor, it has never been an issue. Is it in the appendix? It is not, Your Honor, because as I say, it has never been raised as an issue. Had that issue been raised, we would have submitted that in rebuttal on the motion for summary judgment below. Regardless, however— It's not the spirit that there's a separate agreement, well, that there's an agreement either oral or written that encompasses more than is in this. Well, it certainly provides for the payment, the payment term. I would submit to you that either the credit card slip or the check that it was paid for would also constitute the contract, and as I say— Well, I don't know how a credit card slip would, and it doesn't set forth, it's a writing, but it doesn't set forth the terms of the contract. Well, Your Honor, as I say, had this issue been raised below, we would have had a chance to address that. Finally, with respect to the argument that because under Coral World's version, the Consumer Plain Language Act does not apply, the public policy argument under Restatement 195 does not apply, I would submit to you that the case law submitted in our brief at page 9 on the reply brief and Section 179A of the Restatement of Contracts provides that it doesn't have— the statute does not have to apply. You can infer the public policy from the statute, and so you can infer the public policy to protect consumers from releases with businesses from the Restatement and the Plain Language Act. Thank you very much, Your Honors. Thank you. Thank you very much. Thank you, gentlemen. We'll take that matter under advisement, and I'll take a minute to find out who's come. Thank you. We will now hear—